IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ISLAND INSURANCE COMPANY, LIMITED, | ) ) | CIVIL NO. 12-00499 JMS-KSC |
| | ) | ORDER (1) DENYING NORESCO, |
| Plaintiff, | ) | LLC.'S MOTION TO DISMISS |
| | ) | ISLAND INSURANCE COMPANY |
| vs. | ) | LIMITED'S COMPLAINT OR |
| | ) | STAY PROCEEDINGS PENDING |
| NORESCO, LLC., AMERICAN | ) | ARBITRATION; AND |
| ARBITRATION ASSOCIATION, INC., | ) | (2) GRANTING ISLAND |
| JOHN DOES 1-10, JANE DOES 1-10, | ) | INSURANCE COMPANY, |
| DOE TRUSTEE 1-10, DOE | ) | LIMITED'S MOTION FOR |
| PARTNERSHIPS 1-10, AND DOE | ) | SUMMARY JUDGMENT ON |
| CORPORATIONS 1-10, | ) | COUNT I OF THE COMPLAINT |
| | ) | FILED SEPTEMBER 5, 2012 |
| Defendants. | ) | |
| _____ | ) | |

**<u>ORDER (1) DENYING NORESCO, LLC.'S MOTION TO DISMISS
ISLAND INSURANCE COMPANY LIMITED'S COMPLAINT OR STAY
PROCEEDINGS PENDING ARBITRATION; AND (2) GRANTING
ISLAND INSURANCE COMPANY, LIMITED'S MOTION FOR
SUMMARY JUDGMENT ON COUNT I OF THE COMPLAINT FILED
SEPTEMBER 5, 2012</u>**

## I.  INTRODUCTION

In May 2008, Plaintiff Island Insurance Company, Limited

("Plaintiff" or "Island") issued a performance bond guaranteeing Lighting

Services, Inc.'s ("LSI") work on a subcontract awarded by Defendant NORESCO,

LLC ("NORESCO").  In August 2011, NORESCO notified Island that LSI failed

to pay its employees in accordance with the Davis-Bacon Act and that NORESCO

may make a claim on the performance bond should LSI fail to make payments. NORESCO has since demanded that Island arbitrate this dispute pursuant to an arbitration provision provided in the subcontract between Island and NORESCO.

On September 5, 2012, Island brought this action against NORESCO and the American Arbitration Association ("AAA") seeking injunctive and declaratory relief that this dispute is not subject to arbitration.  Currently before the court is (1) NORESCO's Motion to Dismiss Island's Complaint or Stay the Proceedings Pending Arbitration; and (2) Island's Motion for Summary Judgment on Count I of the Complaint seeking declaratory relief that it is not required to arbitrate any dispute with NORESCO regarding the performance bond.  Based on the following, the court DENIES NORESCO's Motion to Dismiss,[1] and GRANTS Island's Motion for Partial Summary Judgment.

///

///

///

///

---

[1]  Although NORESCO styled its Motion as a Motion to Dismiss pursuant to Rule 12(b)(1), given the arguments made, the court construes it as a Motion to Compel Arbitration. *See, e.g.*, *Perry v. NorthCentral Univ., Inc.*, 2011 WL 4356499, at *3 (D. Ariz. Sept. 19, 2011) (collecting cases).

## II. **BACKGROUND**

**A.     Factual Background**

*1.     The Agreements at Issue*

NORESCO, an energy services company, entered into a contract with the United States to perform certain work on a construction project known as Marine Corps Base Hawaii Lighting Retrofit-Upgrades, Project No. 540005.CN.001.  On or about April 25, 2008, NORESCO entered into a Subcontract Agreement ("Subcontract") with LSI for LSI to perform a portion of the work for a contract price of $3,640,534.  Doc. No. 11-3, Pl.'s Ex. A (Subcontract).

The Subcontract includes the following provision regarding arbitration between NORESCO, as the Contractor, and LSI, as the Subcontractor:

> ARTICLE 6 - ARBITRATION
> 6.1 **Agreement to Arbitrate.**  Claims, disputes, and matters in question arising out of or relating to this Agreement as to matters solely between Contractor and Subcontractor, except for claims which have been waived by the making or acceptance of final payment, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association.  The location of the arbitration proceedings shall be in the State in which the Subcontractor's Work is being performed.  All other claims, disputes and matters in questions [sic] shall be decided in the manner provided in the Agreement between the Owner and the Contractor.

3

Doc. No. 11-3, Pl.'s Ex. A at ECF page 4 of 13.

The Subcontract further requires LSI to obtain "performance and payment bonds running to the Contractor in a sum equal to the total price of this contract with corporate sureties satisfactory to the Contractor . . . ." *Id.* at ECF page 9 of 13. LSI met this obligation by having Island issue Subcontractor Performance Bond number CSB-22862 (the "Performance Bond") and Subcontractor Labor and Material Payment Bond number CSB-22862 (the "Payment Bond"). Doc. Nos. 11-4, -5, Pl.'s Exs. B, C. The Performance Bond provides:

> KNOW ALL MEN BY THESE PRESENTS,
> THAT WE, Lighting Services, Inc. (hereinafter called "Principal"), as Subcontractor, and ISLAND INSURANCE COMPANY, LIMITED, authorized to transact business in the State of Hawaii (hereinafter called "Surety"), as Surety, are held and firmly bound unto Noresco, LLC (hereinafter called "Obligee"), as General Contractor, in the penal sum of Three Million, Six Hundred Forty Thousand, Five Hundred Thirty Four Dollars and No Cents Dollars (3,640,534.00) for the payment whereof Principal and Surety bind themselves, their heirs, executors, successors and assigns, jointly and severally, firmly by these presents.

Doc. No. 11-5, Pl.'s Ex. C. The Performance Bond further recites that LSI has entered into the Subcontract, "[a] copy of which is or may be attached and is hereby referred to as part of this obligation." *Id.*

### 2.     *LSI's Work on the Subcontract and the Present Dispute*

At some point during LSI's work on the Subcontract, the United

States Department of Labor began an investigation into whether LSI's employees

were paid in accordance with the requirements of the Davis-Bacon Act. As a

result, on August 9, 2011, NORESCO provided notice to Island that it intended to

make a claim on the Performance Bond should LSI fail to correct these violations.

Doc. No. 11-6, Pl.'s Ex. D. In an October 14, 2011 response, Island asserted that

NORESCO has no basis to make any claim on the Performance Bond for a variety

of reasons. Doc. No. 11-7, Pl.'s Ex. E.

In a July 26, 2012 letter, NORESCO provided Island a Demand for

Arbitration with the AAA. Doc. No. 11-8, Pl.'s Ex. F. The Demand for

Arbitration states that LSI failed to pay its employees proper wages pursuant to the

Davis-Bacon Act, and that Island is responsible for any back wages that LSI cannot

pay pursuant to the Performance Bond. *Id.* at 1-2. The Demand for Arbitration

further asserts that this dispute is arbitrable because the Subcontract provides for

arbitration of all claims relating to the Subcontract, and the Performance Bond

expressly incorporates the Subcontract by reference. *Id.* at 2. On August 24, 2012,

Island objected to arbitration, arguing that it did not consent to arbitration. Doc.

No. 11-9, Pl.'s Ex. G.

**B.     Procedural Background**

On September 9, 2012, Island filed its Complaint asserting  claims

seeking (1) declaratory relief against Defendants that Island is not required to

arbitrate any disputes or controversies regarding its rights, defenses, and

obligations in connection with any claims NORESCO may bring in connection

with the Performance Bond or Payment Bond (Count I); (2) injunctive relief

enjoining Defendants from conducting arbitration proceedings determining

Island's rights and responsibilities under the terms of the Performance Bond and

Payment Bond (Count II); and (3) declaratory relief that NORESCO does not have

any right to bring a claim on the Performance Bond or Payment Bond (Count III).

On October 15, 2012, NORESCO brought its Motion to Dismiss.

Doc. No. 8.  On October 17, 2012, Island brought its Motion for Partial Summary

Judgment on Count I.  Doc. No. 10.  Oppositions to the Motions were filed on

November 19, 2012, Doc. Nos. 18, 19, and Replies were filed on November 26,

2012.  Doc. Nos. 22, 23.  A hearing was held on December 10, 2012.

///

///

///

///

# III.  STANDARDS OF REVIEW

## A.    Motion to Compel Arbitration

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., which applies to arbitration agreements in contracts involving transactions in interstate commerce, provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract."[2]  9 U.S.C. § 2.  The FAA provides that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008) ("Congress enacted the FAA more than eighty years ago to advance the federal policy favoring arbitration agreements.").  "The standard for demonstrating arbitrability is not high.  The Supreme Court has held that "the FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999)

---

[2]  At the December 10, 2012 hearing, the parties agreed that the FAA applies.

(citing *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985)).

In determining whether to compel a party to arbitration, a district court may not review the merits of the dispute; rather, "the district court's role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue.  If the answer is yes to both questions, the court must enforce the agreement."  *Lifescan, Inc. v. Premier Diabetic Servs., Inc*., 363 F.3d 1010, 1012 (9th Cir. 2004) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000)).  In construing the terms of an arbitration agreement, the district court "appl[ies] general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration."  *Wagner v. Stratton Oakmont, Inc*., 83 F.3d 1046, 1049 (9th Cir. 1996) (citation omitted).

## B.    Summary Judgment

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at

248).  When considering the evidence on a motion for summary judgment, the

court must draw all reasonable inferences on behalf of the nonmoving party.

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille*

*Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence

of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn

in his favor" (citations omitted)).

## IV.  <u>ANALYSIS</u>

The parties' Motions are both directed to the same basic question --

can Island be forced to arbitrate liability for LSI's alleged violations of the Davis-

Bacon Act.  In support of arbitration, NORESCO relies upon the arbitration

provision contained in the Subcontract between NORESCO and LSI, and argues

that the provision applies to Island because the Subcontract was incorporated by

reference into the Performance Contract between LSI and Island.  NORESCO

further argues that because the Subcontract gives the arbitrator the power to

determine arbitrability of disputes, any disputes as to arbitrability must be

determined by the arbitrator such that the court's review is very limited.  In

comparison, Island argues that it is not a party to the Subcontract and that the

arbitration provision by its plain terms does not apply to Island.

The court first addresses the initial question of whether arbitrability

must be determined by the arbitrator or the court, and finding that this is a question for court, determines whether the present dispute is subject to arbitration.

## A.   Whether the Court or the Arbitrator Determines Arbitrability

In general, "gateway questions of arbitrability, such as whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding contract applies to a given controversy," are issues for the court and not the arbitrator to decide. *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-85 (2002)).  This rule flows from "the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration."  *See id.* (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995)).  As a result, in the ordinary course the court determines the issue of arbitrability by applying "ordinary state-law principles that govern the formation of contracts."  *First Options*, 514 U.S. at 944.

Parties may, however, agree to arbitrate the question of arbitrability. But given that the presumption that arbitrability is an issue for the court, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."  *Id.* (quoting *AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)).  Such '[c]lear and

11

unmistakable "evidence" of agreement to arbitrate arbitrability might include . . . a

course of conduct demonstrating assent . . . or . . . an express agreement to do so.'"

*Momot*, 652 F.3d at 988 (quoting *Rent-A-Center*, 130 S. Ct. at 2783 (Stevens, J.,

dissenting) (citing *First Options of Chicago, Inc.*, 514 U.S. at 946)).

Applying these principles to this action, there is no evidence that

Island's course of conduct suggests an agreement to arbitrate -- Island has objected

to the arbitration at every opportunity.  Instead, NORESCO argues that the parties

agreed that the issue of arbitrability should be determined by the AAA because the

Subcontract provides that disputes "shall be decided by arbitration in accordance

with the Construction Industry Arbitration Rules of the AAA."  Subcontract at 6.1.

In turn, Construction Industry Arbitration Rule 9(a) provides that "[t]he arbitrator

shall have the power to rule on his or her own jurisdiction, including any

objections with respect to the existence, scope or validity of the arbitration

agreement."  (Construction Industry Arbitration Rules available at

http://www.adr.org).

NORESCO is correct that courts have generally found a clear and

unmistakable expression of intent to arbitrate arbitrability "where the arbitration

provision [of a contract] incorporates by reference a set of arbitration rules that

includes a rule that the arbitrator will decide the issue of arbitrability."  *See Kimble*

*v. Rhodes Coll., Inc.*, 2011 WL 2175249, at *2 (N.D. Cal. June 2, 2011); *see, e.g.*, *T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 345 (2d Cir. 2010) (holding that when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator"); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) (determining that AAA Commercial Rule 7(a) gave the arbitrator the power to determine arbitrability); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006) (similar); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (similar); *see also Fadal Machining Ctrs., LLC v. Compumachine, Inc.*, 461 Fed. Appx. 630, 632 (9th Cir. 2011) (holding that trial court did not err in concluding that incorporation of AAA's Commercial Arbitration Rules was a clear and unmistakable delegation to the arbitrator).

But what NORESCO (and these cases) do not address is the situation presented here where Island did not actually sign the agreement containing the arbitration provision.  Instead, NORESCO seeks to bind Island to the terms of the Subcontract based on the fact that the Performance Bond between Island and LSI incorporates by the reference the Subcontract.  While signatories to the Subcontract (including NORESCO and LSI) have clearly and umistakably agreed to the terms

13

of the Subcontract through their signatures, that is not necessarily true of a

nonsignatory such as Island.  *See, e.g.*, *Oehme, van Sweden & Assocs. v. Maypaul*

*Trading & Servs. Ltd.*, --- F. Supp. 2d ----, 2012 WL 5396394, at *6 (D. D.C. Nov.

6, 2012) (finding no "clear and umistakable" evidence that the parties agreed to

arbitrate arbitrability where objecting party was a nonsignatory to the agreement);

*Celanese Corp. v. Boc Group PLC*, 2006 WL 3513633, at *3 (N.D. Tex. Dec. 6,

2006) (distinguishing case from situation where courts have allowed the

nonsignatory defendant to compel the signatory to arbitrate issues of arbitrability,

and determining that issue of arbitrability where nonsignatory objects is a question

for the court).

Indeed, the particular terms of the Subcontract do not even mention

Island by name -- rather, the Subcontract provides only that LSI is required to

obtain performance and payment bonds.  Doc. No. 11-3, Pl.'s Ex. A.  Further, the

Subcontract's arbitration provision -- providing that "[c]laims, disputes, and

matters in question arising out of or relating to this Agreement as to matters *solely*

*between Contractor and Subcontractor* . . . shall be decided by arbitration," *id.* at

ECF page 4 of 13 (emphasis added) -- on its face appears to limit arbitration to

disputes between NORESCO and LSI only and not between NORESCO and a

nonsignatory such as Island (whether this language should be interpreted in this

14

manner is addressed in detail below).  Given these issues -- that Island did not sign the Subcontract, is not even mentioned by name in the Subcontract, and the arbitration provision does not appear to apply to Island -- the court finds that there is no clear and unmistakable evidence that Island expressly agreed to arbitrate this dispute.  As a result, the court finds that the court and not the AAA must determine whether Island is bound to arbitrate under the Subcontract.

## B.      Whether Island Is Bound to Arbitrate Under the Subcontract

Whether Island is bound to arbitrate pursuant to the Subcontract raises two separate issues: (1) whether the Performance Bond incorporates by reference the Subcontract; and (2) if so, whether the Subcontract provides that disputes between Island and NORESCO are subject to arbitration.  At the December 10, 2012 hearing, Island conceded that the Performance Bond incorporates by reference the Subcontract.  As a result, the court addresses only the second question.

"[I]n order for a nonsignatory to be bound by an arbitration clause incorporated by reference, the arbitration clause must be broad enough to allow the disputes of nonsignatories to be brought within its terms."  *Fidelity & Guar. Ins. Co. v. West Point Realty, Inc.*, 2002 WL 1933780, at *4 (S.D.N.Y. Aug. 21, 2002); *see Limonium Maritime S.A. v. Mizushima Marinera, S.A.*, 1999 WL 46721, at *5

15

(S.D.N.Y. Feb. 1, 1999) ("[T]he nonsignatory still cannot be compelled to arbitrate unless the arbitration clause itself contains language broad enough 'to allow nonsignatories' disputes to be brought within its terms.'" (quoting *Continental U.K., Ltd. v. Anagel Confidence Compania Navieras, S.A.*, 658 F. Supp. 809, 814 (S.D.N.Y. 1987)).   And that the arbitration provision must be broad enough to encompass a nonsignatory makes common sense -- "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."   *AT&T Techs., Inc.*, 475 U.S. at 649 (quotations omitted).

"When determining whether the language of a[n] . . . arbitration clause is broad enough to encompass a dispute which is not solely between signatories . . . 'courts have consistently drawn a distinction between [an] arbitration clause . . . specifically identifying the parties to which it applies, and a broader form of arbitration clause which does not restrict the parties.'"   *Limonium*, 1999 WL 46721, at *5 (quoting *Lucky Metals Corp. v. M/V Ave.*, 1995 WL 575195, at *2 (S.D.N.Y. 1995) (alterations in original)); *Young v. Cnty. of Hawaii*, 2012 WL 2366016 (D. Haw. June 19, 2012) (same); *see also* Domke on Commercial Arbitration § 13.5 at 13-21 (3d ed. 2011) ("The wording of the guaranty or performance bond is a key to whether or not the guarantor or surety is

obligated to arbitrate, with emphasis on the language chosen by the parties in the guaranty or surety bond").  This reasoning is based on the basic contract interpretation principle that the words used in a contract should mean what they say -- if an arbitration clause "is specifically restricted to the immediate parties[, it] cannot be expanded to include a non-party, incorporation notwithstanding." *Cont'l Ins. Co. v. M/V NIKOS N*, 2002 WL 530987, at *3 (S.D.N.Y. Apr. 9, 2002).

Courts have therefore held that broad provisions requiring arbitration of "all disputes arising" out of a contract are broad enough to encompass disputes with nonsignatories.  *See, e.g.*, *U.S. Fidelity & Guar. Co. v. West Point Constr. Co.*, 837 F.2d 1507, 1508 (11th Cir. 1988) (holding that where subcontract provided that disputes arising under the contract were subject to arbitration, nonsignatory must arbitrate dispute); *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 45 (2d Cir. 1993) (requiring nonsignatory to arbitrate where provision provided that "[a]ny question or dispute arising between the contracting parties concerning the interpretation of this . . . Agreement"); *Exch. Mut. Ins. Co. v. Haskell Co.*, 742 F.2d 274, 275 (6th Cir. 1984) (holding that contract providing that "[a]ll claims, disputes and other matters in question arising out of, or relating to this contract" were subject to arbitration); *Upstate Shredding, LLC v. Carloss Well Supply Co.*, 84 F. Supp. 2d 357, 365-66

(N.D.N.Y. 2000) ("All disputes and claims between the parties which may arise out of or in connection with this Contract . . . ."); *Maritime*, 1999 WL 46721, at *6 ("Any and all differences and disputes between the partied [sic] of whatsoever nature arising out of or related to this Agreement . . . ."); *Thyssen, Inc. v. M/V Markos N*, 1999 WL 619634, at *5 (S.D.N.Y. Aug. 16, 1999) ("[A]ny dispute arising under this Charter Party or Bills of Lading . . . ."); *In re S&R Co. of Kingston, Latona Trucking, Inc*., 984 F. Supp. 95, 100 (N.D.N.Y. 1997) ("In the event any dispute arises between the Parties relative to this contract . . . .")).

In comparison, courts have generally determined that arbitration clauses with language restricting arbitration to the parties specifically identified in the agreement do not require nonsignatories to arbitrate disputes.  *See, e.g.*, *Import Export Steel Corp. v. Miss. Valley Barge Line Co.*, 351 F.2d 503, 505-06 (2d Cir. 1965) (determining that arbitration clause limited to disputes "between the Disponent Owners and the Charterers" sufficiently narrow not to bind nonsignatory to arbitration); *Cont'l U.K. Ltd. v. Anagel Confidence Compania Naviera, S.A.*, 658 F. Supp. 809, 814 (S.D.N.Y. 1987) (explaining that "where the restrictive 'owner/charterer' language is used in the arbitration clause, it is indeed difficult to bind to that clause one who is not a signatory to the charter party" (internal quotations omitted); *see also Parkway Dodge, Inc. v. Yarbrough*, 779

18

So.2d 1205, 1209-10 (Ala. 2000) (preventing a nonsignatory manufacturer from enforcing an arbitration provision that was specifically limited to disputes between the signing parties ("dealer" and "purchaser") because the language was not broad enough to reach the manufacturer); *Hartford Acc. & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 109 Md. App. 217, 292, 674 A.2d 106, 142 (Md. App. 1996) (explaining that even if arbitration provision was incorporated into the bond, it required arbitration between only the named parties, indicating no intent to bind the surety).

The arbitration provision of the Subcontract, section 6.1, provides:

ARTICLE 6 - ARBITRATION
6.1 **Agreement to Arbitrate.**  Claims, disputes, and matters in question arising out of or relating to this Agreement as to matters *solely between Contractor and Subcontractor*, except for claims which have been waived by the making or acceptance of final payment, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association.  The location of the arbitration proceedings shall be in the State in which the Subcontractor's Work is being performed.  All other claims, disputes and matters in questions [sic] shall be decided in the manner provided in the Agreement between the Owner [the Government] and the Contractor [NORESCO].

Doc. No. 11-3, Pl.'s Ex. A at ECF page 4 of 13 (emphasis added).

According to its plain language, section 6.1 specifically limits its

otherwise broad call for arbitration "as to matters solely between Contractor and Subcontractor."  This phrase must be given meaning -- it is a "fundamental rule" of contract interpretation that "a court must give effect to every word or term employed by the parties and reject none as meaningless or surplusage in arriving at the intention of the contracting parties."  *United States v. Hathaway*, 242 F.2d 897, 900 (9th Cir. 1957).  Thus, section 6.1's requirement to arbitrate disputes is limited to those disputes solely between Contractor and Subcontractor, and the Subcontract specifically defines that the Contractor is NORESCO and the Subcontractor is LSI.  *Id.* at ECF page 1 of 13.  In other words, according to the Subcontract's plain terms, section 6.1 of the Subcontract limits arbitration to disputes that are between NORESCO and LSI only and does not even hint that disputes between NORESO and Island must be arbitrated.[3]

In opposition, NORESCO argues that the arbitration requirement must apply to Island in light of the other language in section 6.1.  Specifically, although section 6.1 provides that "[c]laims, disputes, and matters in question arising out of or relating to this Agreement as to matters solely between Contractor and Subcontractor" shall be subject to arbitration, it also provides that "[a]ll other

---

[3] Neither party argues that the court must resort to extrinsic evidence to determine the scope of the parties' agreement(s), and the court finds no ambiguity that would require such evidence.  As a result, this dispute is ripe for summary adjudication.

claims, disputes and matters in questions [sic] shall be decided in the manner provided in the Agreement between the Owner and the Contractor." *Id.* at ECF page 4 of 13.  According to NORESCO, the Subcontract provides only two avenues for dispute resolution -- either (1) arbitration of disputes, or (2) dispute resolution pursuant to the Agreement for "all other claims, disputes and matters." Although NORESCO does not provide the "Agreement between the Owner and the Contractor," there is no dispute that it is a federal prime contract, which outlines a dispute resolution process for claims involving the federal government (*i.e.*, the "Owner").  NORESCO therefore argues that the arbitration provision must be construed to apply to Island because otherwise NORESCO has no remedy against Island -- it cannot utilize the dispute resolution process for government matters where the claims do not involve the federal government.  *See* Doc. No. 19, Def.'s Opp'n at 10-12.

Although NORESCO's construction of the arbitration provision is perhaps plausible, the court's construction does not lead to such absurd result.  The court does not read the Subcontract as limiting NORESCO to *only* two options of either arbitration or a dispute mechanism with the federal government.  Rather, section 6.1 simply does not contemplate how disputes must be resolved that are not solely between NORESCO and LSI and do not involve the Owner (*i.e.*, the federal

government).  In other words, section 6.1 leaves silent how NORESCO must

resolve disputes it may have with other parties such as Island, and does not prevent

NORESCO from bringing an appropriate action in the proper jurisdiction.

That the Subcontract leaves open the dispute resolution process for

claims that do not involve the federal government but do involve third parties to

the Subcontract (such as Island) is confirmed by other provisions within Article 6

of the Subcontract.  Specifically, section 6.4, titled "Venue," contemplates that the

Subcontractor, LSI, may bring a civil action in the courts of the state where the

work is being performed (*i.e.*, Hawaii):

> 6.4 Venue.  The Subcontractor agrees that it will not
> commence any action against the Contractor, or the
> sureties on the performance bond given by the Contractor
> to the Owner because of any matter arising out of this
> Subcontract in the Courts of any State other than the
> State in which the Subcontractor's Work is being
> performance.

Doc. No. 11-3, Pl.'s Ex. A at ECF page 4 of 13.  In other words, despite requiring

LSI to arbitrate disputes "solely between" NORESO and LSI, the Subcontract

contemplates that LSI may bring an "action" regarding other matters.  Thus,

section 6.1 outlining that "matters solely between the Contractor and

Subcontractor" must be arbitrated and that "all other claims, disputes and matters"

shall be decided pursuant to the Agreement, does not define the entire universe of

how disputes must be resolved.  Rather, the Subcontract contemplates that disputes that are not solely between NORESCO and LSI and do not involve the federal government may be heard by a court in Hawaii.  This action fits within this category.

NORESCO further argues that the Subcontract must be read in context of the Performance Bond providing that LSI and Island are bound "jointly and severally" to NORESCO.  Doc. No. 19, Def.'s Opp'n at 9.  NORESCO asserts that by incorporating the Subcontract by reference, "Island agreed to arbitrate its co-extensive liability for LSI's breach," and that "federal courts have found sureties to be bound by arbitration clauses substantially similar to the instant provision."  *Id.*  This argument not only ignores the plain language of the arbitration provision, but also ignores that a singular procedure is not a given where there is co-extensive liability.  Rather, as described above, courts have drawn a distinction between broadly worded arbitration provisions versus those that specifically identify the parties, and this distinction is consonant with the principle that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *AT&T Techs., Inc.*, 475 US. at 648 (quotations omitted).[4]

---

[4]  NORESCO cites only two cases in support of its argument that "federal courts have
(continued...)

Finally, NORESCO argues that construing the Subcontract to limit arbitration as between NORESCO and LSI only runs counter to the principle that any ambiguities as to the scope of arbitration must be resolved in favor of arbitration. *See* Doc. No. 19, Def.'s Opp'n at 12-13. The court is well-aware of the federal policy favoring arbitration agreements, as well as the fact that limiting the arbitration provision to disputes between NORESCO and LSI means that NORESCO may be forced to pursue arbitration against LSI while at the same time pursuing litigation against Island. But these facts cannot override the plain language of the Subcontract requiring arbitration of disputes "solely between Contractor and Subcontractor." These words are unambiguous and therefore do not bring into play the concept that ambiguities must be interpreted in favor of arbitration. *See, e.g.*, *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 923 (9th Cir. 2011) (determining that federal policy in favor of arbitration could not override unambiguous narrow language precluding arbitration). Rather, NORESCO included this language in the Subcontract, and these words must be

---

[4](...continued)
found sureties to be bound by arbitration clauses substantially similar to the instant provision." *See* Doc. No. 19, Def.'s Opp'n at 9-10. *United States v. Neumann Caribbean International*, 750 F.2d 1422 (9th Cir. 1985), did not address the specific issue of whether a surety could be compelled to arbitrate where it was a nonsignatory to the agreement at issue, and is therefore not helpful in this analysis. And while *Thomas O'Connor & Co. v. Insurance Co. of North America*, 697 F. Supp. 563 (D. Mass. 1988), appears to stand alone in finding that a narrow arbitration provision may apply to a nonsignatory, the court finds it unpersuasive.

24

given meaning.

In sum, the court finds that the Subcontract should be construed as requiring arbitration between NORESCO and LSI only.  As a result, the court DENIES NORESCO's Motion to Dismiss, and GRANTS Island's Motion for Partial Summary Judgment on Count I of the Complaint seeking declaratory relief that it is not required to arbitrate any dispute with NORESCO regarding the performance bond.

## V.  <u>CONCLUSION</u>

Based on the above, the court DENIES NORESCO's Motion to Dismiss, and GRANTS Island's Motion for Summary Judgment on Count I of the Complaint as to NORESCO.  Count I as to the AAA, and Counts II and III of the Complaint remain.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 18, 2012.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Island Ins. Co., Ltd. v. NORESCO, LLC et al.*, Civ. No. 12-00499 JMS-KSC, Order (1) Denying NORESCO, LLC'S Motion to Dismiss Island Insurance Company Limited's Complaint or Stay Proceedings Pending Arbitration; and (2) Granting Island Insurance Company, Limited's Motion for Summary Judgment on Count I of the Complaint Filed September 5, 2012